MOSLEY & ASSOCIATES
Walter Mosley, Esq. (SBN 244169)
wm@waltermosleyesq.com
Carlos E. Montoya, Esq. (SBN 317057)
cem@waltermosleyesq.com
Nathalie Meza Contreras, Esq. (SBN 322545)
nmc@waltermosleyesq.com
1055 W. 7th St., 33rd Floor
Los Angeles, California 90017
Telephone: (213) 232 - 3886

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERMELLE HENDERSON, an individual, | Case No. |
| Plaintiff, | **CIVIL RIGHTS COMPLAINT FOR DAMAGES** |
| v. | |
| COUNTY OF LOS ANGELES, a municipal corporation; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity; SHERIFF ALEX VILLANUEVA, an individual in both his personal and official capacities; DEPUTY ROMERO, an individual in her official capacities; and DOES 1 through 20, all sued in their individual capacities, | 1. **Deprivation of Property / Fourth and Fourteenth Amendments / 42 U.S.C. § 1983**<br>2. **Takings Claim / Fifth Amendment/ 42 U.S.C. § 1983**<br>3. **Unreasonable Searches and Seizures / Fourth Amendment / 42 U.S.C. § 1983**<br>4. **Unreasonable Searches and Seizures / Cal. Const., Art. I § 13**<br>5. **Violation of the Tom Bane Civil Rights Act / Cal. Civ Code § 52.1**<br>6. **Negligence**<br>7. **Negligent/Intentional Infliction of Emotional Distress** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

Plaintiff JERMELLE HENDERSON, for his complaint against Defendants COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, SHERIFF ALEX VILLANUEVA, DEPUTY ROMERO, and Does 1-10, inclusive, allege as follows:

///

## INTRODUCTION

1. This civil rights action seeks compensatory and punitive damages arising from defendants' unreasonable seizure, use of force, unlawful taking of personal property, and racial discrimination against plaintiff on or about July 9, 2020, by the Los Angeles County Sheriff's Department, in the City of Compton, County of Los Angeles, State of California.

## JURISDICTION AND VENUE

2. This action is brought pursuant to the United States Constitution and 42 U.S.C. § 1983, *et seq*. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 1367(a).

3. The acts complained of herein arise in this District, and therefore venue lies in this District pursuant to 28 U.S.C. § 1391.

## THE PARTIES

4. Plaintiff, JERMELLE HENDERSON ("Mr. Henderson" and "Plaintiff"), is, and was at all times relevant hereto, a resident of the County of Los Angeles, State of California.

5. At all times material herein, Defendant County of Los Angeles ("LA County") was and is a public entity duly organized and chartered under the laws of the State of California, and was responsible for the hiring, training, and supervising of the conduct of its employees and agents of the County and the Los Angeles County Sheriff's Department ("LASD") and all Los Angeles Sherriff's Department deputies and members.

6. At all times material herein, Defendant Los Angeles County Sheriff's Department ("LASD"), is a public entity subject to suit under 42 U.S.C. § 1983 (*Streit v. County of Los Angeles*, 236 F.3d 552, 565-66 (9th Cir. 2001)).

7. Plaintiff names the LASD as a separate defendant for two reasons. First, Plaintiff is informed and believes and based thereon alleges that LA County Sheriff Alex Villanueva may claim he is *not* a policymaker for defendant LA County. However, Plaintiff is further informed and believes and thereon alleges that should Villanueva make that claim, he will nevertheless admit he *is* the policymaker with respect to his own department, defendant LASD. Thus, Villanueva's self-admitted status as a policymaker for defendant LASD will make that defendant subject to liability should it be determined that Villanueva is responsible for policies that violated the constitutional rights of Plaintiff.

8. Second, there is a disagreement between the Ninth Circuit and the California Supreme Court on whether a California sheriff is a state or a county policymaker for § 1983 purposes. In *Brewster v. Shasta County*, 275 F.2d 803 (9th Cir. 2001), and *Streit v. County of Los Angeles*, 236 F.3d 552, 559 (9th Cir. 2001), the Ninth Circuit held that California sheriffs are agents of their employing county for §19683 purposes. The California Supreme Court in *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 828-39 (2004), disagreed with the Ninth Circuit, holding instead that a California sheriff is not an agent of his employing county for purposes of § 1983 liability. Should it ultimately be determined that *Venegas* correctly states the law on this point, Plaintiff is informed and believes that Villanueva will nevertheless remain a policymaker for his own department, defendant LASD. Since defendant LASD is not an arm of the state for purposes of immunity under the Eleventh Amendment (see *Streit*, 236 F.3d at 556-57), Plaintiff can still prevail against Villanueva in his official capacity and defendant LASD notwithstanding *Venegas*.

9. Defendants LA County and LASD are "persons" subject to suit within the meaning of 42 U.S.C. § 1983 under *Monell v. New York Dept. of Social Serv.*, 436 U.S. 658, 691 (19678). Collectively, these two defendants are referred to as "Entity Defendants."

10. Defendant Alex Villanueva ("Villanueva"), an individual, at all times material hereto was and is the LA County Sheriff. Plaintiff is informed and believes and based therein alleges that Villanueva is a policymaker for both defendants LA County *and* LASD. Plaintiff sues Villanueva in his individual and official capacities.

11. Defendant Deputy Romero ("Romero"), an individual, at all times material hereto was an employee of LASD. Plaintiff sues Romero in her official capacity.

12. At all times material herein, Entity defendants were responsible for the employment, training, and supervision of the actions, conduct, policies, practices, and customs of the employees and agents of the LA County, including LASD and all of its deputies and members, including Deputy Romero. At all times material herein, Entity defendants were responsible for assuring that the actions, conduct, policies, procedures, and customs of the LASD complied with the laws and the Constitutions of the United States and of the State of California.

///

13. At all times referred to herein, Defendant, DEPUTY ROMERO, was a police officer employed by the LASD and working in the City of Compton.

14. The true names of defendants DOES 1 through 20, inclusive, are not now known to Plaintiff who therefore sues these Defendants by fictitious names. Upon ascertaining the true name of a DOE Defendant, Plaintiff will amend this complaint, or seek leave to do so, by substituting same for the fictitious name. Plaintiff is informed and believes, and based thereon alleges, that each DOE Defendant is in some manner responsible for the injuries and damages herein complained of.

15. At all times referred to herein, Defendants Villanueva and Deputy Romero were each acting as the employee, agent, representative, and officer of every other defendant herein, and within the course and scope of such employment and agency.

16. Each of the individually named defendants was at all times relevant acting under color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the state of California and on behalf of the LASD.

**FACTUAL ALLEGATIONS**

17. Plaintiff Jermelle Henderson ("Mr. Henderson") is an African American male who was born and raised in Compton, California. As an entrepreneur, Mr. Henderson has established several businesses in the County of Los Angeles, including Taco Mell, Court Cafe, and H & M Beauty Supply. He has remained an upstanding example of a home-grown entrepreneur and has consistently found opportunities to give back to his community both as a local businessman and as member of his community. Mr. Henderson is well-known and respected in Compton because of the popularity of his businesses and his commitment to giving back.

18. At or about 3:30 pm on July 9, 2020, Mr. Henderson was lawfully driving a rented Cadillac Escalade within the city of Compton, traveling west on West Alondra Boulevard. He was driving to his restaurant, Taco Mell, when he was stopped by Defendant Deputy Romero ("Defendant Romero"), after following him for about half a mile.

19. Upon Mr. Henderson stopping his car, Defendant Romero rapidly exited her patrol vehicle, drew her weapon, and immediately pointed it at Mr. Henderson without bothering to close the

door to her car. Mr. Henderson asked Defendant Romero why the weapon was drawn and pointed at him in a threatening manner. Defendant Romero responded that she "always does this in this neighborhood."

20. Defendant Romero asked Mr. Henderson why he was not looking at her as she spoke to him. Mr. Henderson, frightened by Defendant Romero, who initially approached him aggressively with her gun drawn, responded that he did not know why he was being pulled over.

21. When Defendant Romero asked him for his license and registration, Mr. Henderson responded that he was driving a rented vehicle. Shocked, frightened, and confused by Defendant Romero's behavior and response, Mr. Henderson attempted to activate his mobile phone's video camera seeing that he was alone with Defendant Romero. Defendant Romero reached into Mr. Henderson's vehicle and slapped the phone out of Mr. Henderson's hand. Defendant Romero then grabbed the phone and threw it at the ground some distance away.

22. Defendant Romero then proceeded to drag Mr. Henderson out of his vehicle, slammed him onto the vehicle, and forcibly handcuffed him causing both bruising and bleeding. While Defendant Romero manhandled Mr. Henderson, he did not resist. As Defendant Romero walked him to her patrol vehicle, Mr. Henderson told her that he owned a local taco restaurant and said, "I am Taco Mell." She acknowledged his statement by saying that she knew who he was and proceeded to search Mr. Henderson.

23. While Defendant Romero searched Mr. Henderson, she was not wearing gloves nor a face mask to cover her mouth and nose.[1] Defendant Romero searched Mr. Henderson by patting down his body, focusing on Mr. Henderson's genitals over his clothes and his buttocks under the pretext of a search. Mr. Henderson felt violated and humiliated by the manner in which Defendant Romero touched his genitals.

24. Then, as Defendant Romero shoved Mr. Henderson in her patrol vehicle, she aggressively slammed Mr. Henderson his head and backside into the vehicle. As Defendant Romero continued to with her hostile ramming of Mr. Henderson into the patrol vehicle, the 6 foot 3 inch tall man, remarked that he was having a hard time getting into the patrol car due to his size. Defendant Romero remarked that

---

[1] At the time in question, the County of Los Angeles recommended various health and safety measures for the public, including public officers, to prevent the spread of the Coronavirus, or COVID-19, amidst the global pandemic.

1  she could "fit big Samoan's in there every day and [he] fit" as she forcibly squeezed him into the back of
2  the patrol slamming his head another time against the top of the door entry.

3      25.    During this time, as Defendant Romero yelled at Mr. Henderson, she discharged droplets
4  from her mouth that came into contact with Mr. Henderson's face, nose, and mouth causing him great
5  consternation given that Mr. Henderson has taken every precaution to avoid exposing himself and his
6  young family, including his infant child, to COVID-19.

7      26.    Once Mr. Henderson was inside of the Deputy's patrol vehicle, Defendant Romero began
8  a search of Mr. Henderson's rented car. This search included conspicuously emptying an entire bottle of
9  expensive cologne in Mr. Henderson's full sight. During the search of Mr. Henderson's vehicle,
10 Defendant Romero searched Mr. Henderson's bag and obtained his driver's license.

11     27.    While runing Mr. Henderson's identification through the Sheriff's database, Defendant
12 Romero remarked about "bad things and crime" and that "people were getting killed in the area" referring
13 to Compton. Mr. Henderson responded that he was from Compton and knew what went on. She told him
14 that she wanted to give him a ticket for alleged violations on the rental vehicle and acknowledged that
15 she did not have a reason to pull him over because there was nothing in the car. After her search of Mr.
16 Henderson's identification in the Sheriff's database, Defendant Romero concluded that Mr. Henderson
17 had no criminal history on file.

18     28.    Defendant Romero then proceeded to uncuff Mr. Henderson. Before releasing Mr.
19 Henderson from his restraint, Defendant Romero asked him if he knew a known Compton rapper, Roddy
20 Ricch and if he could arrange for her to be "introduced to Roddy Rich" (a famous African American
21 entertainer). Mr. Henderson responded that he did know him. Then, as Defendant Romero let Mr.
22 Henderson out of the patrol car, in a mocking tone, she said that Mr. Henderson would need to make her
23 a "care package" from Taco Mell's.

24     29.    Defendant Romero detained and searched Mr. Henderson for approximately thirty (30)
25 minutes.

26     30.    As a result of Defendant Romero's excessive use of force, Mr. Henderson suffered
27 physical injuries to his head, neck, and back.
28 ///

31. Defendant Romero possessed no search or arrest warrant at the time Mr. Henderson's vehicle was stopped and searched.

32. Neither did Defendant Romero have probable cause to stop, detain, and interrogate Mr. Henderson or search his vehicle.

33. At the time Defendant Romero stopped and searched Mr. Henderson's vehicle, she did not possess any reasonable suspicion that a crime had been or was being committed by Mr. Henderson.

34. Mr. Henderson is informed and believes, and on the basis of such information and belief alleges, that the stopping of his vehicle and his detention and the search of his vehicle were the result of racial profiling practiced by the Los Angeles County Sheriff's Department.

## FIRST COUNT

**Unreasonable Search and Seizure – Stop, Detention, and Interrogation / 42 U.S.C. § 1983**

(By Plaintiff Against Defendant Romero)

35. Plaintiff realleges each and every allegation in paragraph 1 through 33 of this Complaint with the same force and effect as if fully set forth herein.

36. Defendant Romero stopped Plaintiff in his motor vehicle, detained, and interrogated him without cause, in violation of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Plaintiff under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

37. As a result of the conduct of Defendant Romero, she is liable for Plaintiff's injuries because she was an integral participant to the violations of Plaintiff's rights.

38. Defendant Romero had no reasonable suspicion or probable cause or lawful basis whatsoever for Plaintiff's stop, detention, interrogation, and the search of Plaintiff's vehicle.

39. The conduct of Deputy Romero was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to Defendant Romero.

40. Defendant Romero's actions constituted a violation of Plaintiff's Fourth Amendment rights under 42 U.S.C. § 1983.

///

41. As a direct and proximate result of the malicious and outrageous conduct of Defendant Deputy Romero as set forth above, Plaintiff suffered injuries such as lacerations, a head injury, and bruises, neck injury, and back injury. Additionally, Plaintiff was likely concussed with severe back pains, swollen wrists, and headaches. Plaintiff also suffered nightmares and insomnia as well as great apprehension when returning to the City of Compton whenever necessary to pick up his daughter.

42. The conduct of Defendant Romero was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary andn punitive damages as to Defendant Romero.

43. Accordingly, Defendant Romero, is liable to Plaintiff for compensatory damages proximately caused by Defendant Romero and punitive damages under 42 U.S.C. §1983.

44. Plaintiff also seeks attorney fees under this claim.

## SECOND COUNT

**Unreasonable Search and Seizure – Excessive Use of Force / 42 U.S.C. § 1983**

(By Plaintiff Against Defendant Romero)

45. Plaintiff realleges each and every allegation in paragraph 1 through 43 of this Complaint with the same force and effect as if fully set forth herein.

46. The unreasonable use of force by Defendant Romero deprived Plaintiff of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Plaintiff under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

47. As a result, Plaintiff suffered extreme mental and physical pain and suffering, and loss of enjoyment of life.

48. As a result of Defendant Romero's conduct, she is liable for Plaintiff's injuries because she was an integral participant in the excessive force used on Plaintiff.

49. Defendant Romero slamming Plaintiff against a vehicle, causing him to hit his head and hurt his back as she forced him into the patrol vehicle was an excessive use of force.

50. This use of force was excessive and unreasonable under the circumstances, especially since Plaintiff was unarmed and did not present any immediate threat to the deputy. Defendant Romero's

actions thus deprived Plaintiff of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

51. The conduct of Defendant Romero was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to Defendant Romero.

52. As a direct and proximate result of the wrongful, intentional, and malicious acts and omissions of Defendant Romero, Plaintiff suffered serious physical injuries and severe mental and emotional distress and injuries.

53. As a further direct and proximate result of the wrongful, intentional, and malicious acts and omissions of Defendant Romero, Plaintiff was placed in great fear for his life and physical well-being and has suffered and continues to suffer extreme and severe mental anguish, as well as great mental and physical pain and injury, all to his damage in a sum to be determined at trial. As a result of the mental anguish, Plaintiff has been required to employ, and continues to employ, medical professionals to treat his physical injuries and employs mental health professionals to treat his emotional distress.

54. Plaintiff also seeks attorney fees under this claim.

### THIRD COUNT

### Takings Claim / 42 U.S.C. § 1983 / Fifth Amendment

(By Plaintiff Against Entity Defendants Only)

55. Plaintiff realleges each and every allegation in paragraph 1 through 53 of this Complaint with the same force and effect as if fully set forth herein.

56. By seizing Plaintiff's items of personal property and not disposing of it, the Entity defendants physically took possession of Plaintiff's property ostensibly for a public purpose of punishing Plaintiff. Defendants have not compensated Plaintiff, but instead, effected a *de facto* forfeiture of Plaintiff's property. Consequently, the seizures without any judicial review constituted a "Taking" within the meaning of the Takings Clause of the Fifth Amendment of the United States Constitution.

57. Defendant's property seizures constituted a final decision. Per the policies described above, the Entity defendants have not provided any review process, judicial or otherwise, to challenge the property seizures.

58. Because the Entity defendants effected a Taking of personal property without payment of compensation, Plaintiff is entitled to recover the reasonable value of the property defendants seized.

## FOURTH COUNT

**Deprivation of Property / 42 U.S.C. § 1983 / Fourth and Fourteenth Amendments**

(By Plaintiff Against All Defendants)

59. Plaintiff realleges each and every allegation in paragraph 1 through 57 of this Complaint with the same force and effect as if fully set forth herein.

60. The seizure of Plaintiff's items of personal property without a warrant or judicial review of any kind, has and is a deprivation of Plaintiff's property in violation of the Fourth and Fourteenth Amendments. Therefore, Plaintiff is entitled to recover compensatory damages proximately caused by the property seizures, as against all defendants.

61. The acts alleged herein were the product of a policy of custom of the Entity Defendants and personally approved by Defendant Villanueva as alleged above, and entitles Plaintiff to recover punitive damages as against individual defendants.

## FIFTH COUNT

**Municipal Liability for Unconstitutional Custom or Policy / 42 U.S.C. § 1983**

(By Plaintiff Against Entity Defendants and Defendant Villanueva)

62. Plaintiff realleges each and every allegation in paragraph 1 through 57 of this Complaint with the same force and effect as if fully set forth herein.

63. On and for some time prior to July 9, 2020 (and continuing to the present date), Defendants LA COUNTY and LASD, deprived Plaintiff of the rights and liberties secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, in that said defendants and their supervising and managerial employees, agents, and representatives, including Defendant VILLANUEVA, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiff, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practices.

64. Prior to the filing of this Complaint and the incidents above, Entity Defendants and Defendant Villanueva knew of several incidents of sheriff misconduct and harassment of the public that

has been ongoing for months if not years and subsequently were revealed by Compton Mayor Aja Brown as she herself had been the victim of such harassment. In short, this is part of a pattern of misconduct and Constitutional violations emanating from the Sheriff's station under Captain Clark's command of the LASD City of Compton division.

65. The County of Los Angeles is vested by state law with the authority to make policy for the Los Angeles Sheriff's Department on the use of force in making arrests. The County Board of Supervisors are aware of a pattern of either excessive force or inappropriate detainment or harassment by police deputies employed by the city of Compton. They were aware that the County's policies regarding the discipline of deputies accused of abuse of police powers were so inadequate that it was obvious that a failure to correct them would result in further incidents of abuse and harassment; and the failure to correct said policies caused the excessive force and illegal seizure and search to be used upon plaintiff as set forth above. The allegations in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

66. Entity Defendants and Defendant Villanueva have employed and retained as deputies and other personnel, including Defendant Deputy Romero, at all times material herein, knew or reasonably should have known, had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow LA COUNTY and/or LASD policies. It was known the Entity Defendants that Defendant Romero had used unreasonable force on others that she had arrested prior.

67. Entity Defendants and Defendant Villanueva inadequately supervised, trained, controlled, assigned, and disciplined LA COUNTY and LASD deputies, and other personnel, who they knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits.

68. Entity Defendants and Defendant Villanueva failed to adequately train deputies, including Defendant Romero, and failed to institute appropriate policies, regarding the excessive use of force.

69. Defendant Villanueva had an obligation to correct those issues and order deputies not to repeat such incidents. The failure to meet that obligation thus tacitly authorizes such misconduct. If Defendant Villanueva had taken such remedial action, the unreasonable seizure of the Plaintiff would not have occurred.

70. At all times relevant to this complaint, Defendant Romero of the Los Angeles County Sheriffs was acting under the direction and control of Defendant Villanueva and the Sheriff's Department of Los Angeles County, and were acting pursuant to the official policy, practice, or custom of the County of Los Angeles.

71. Acting under color of law and pursuant to official policy, practice, or custom, Entity Defendants and Defendant Villanueva intentionally, knowingly, and recklessly failed to instruct, supervise, control, and discipline, on a continuing basis, Defendant Deputy Romero in her duties to refrain from unlawfully and maliciously assaulting and beating citizens and otherwise using unreasonable and excessive force before, during, or after the making of an arrest.

72. Acting under color of law and pursuant to official policy, practice, or custom, Entity Defendant and Defendant Villanueva intentionally, knowingly, and recklessly failed to instruct, train, and supervise Defendant Romero in the basis for the correct procedure for making a stop, for detaining an individual, and what constitutes a legal search or an abuse of the public's rights.

73. Entity Defendants and Defendant Villanueva had knowledge, or, had they diligently exercised their duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs which were done, as heretofore alleged, were about to be committed. Defendant Villanueva and the County of Los Angeles had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and intentionally, knowingly, or recklessly failed or refused to do so. The allegations in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

74. Entity Defendants and Defendant Villanueva directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendant Deputy Romero heretofore described. The allegations in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

75. As a direct and proximate result of the acts of Entity Defendants and Defendant Villanueva as set forth herein, Plaintiff suffered physical injury and severe mental anguish in connection with the deprivation of his constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and protected by 42 U.S.C. § 1983.

76. The acts of Entity Defendants and Defendant Villanueva as set forth above were wanton, malicious, and oppressive, thus entitling Plaintiff to an award of punitive damages.

77. Accordingly, Entity Defendants and Defendant Villanueva each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

78. Plaintiff also seeks attorney fees under this claim.

## SIXTH COUNT

**Municipal Liability for Failure to Train, Supervise, and Discipline / 42 U.S.C. § 1983**

(By Plaintiff Against Entity Defendants and Defendant Villanueva)

79. Plaintiff realleges each and every allegation in paragraph 1 through 77 of this Complaint with the same force and effect as if fully set forth herein.

///

80. While acting under the color of state law and within the course and scope of their employment as deputies for LA COUNTY and LASD, Deputy Romero's stopping, detaining, interrogating, and searching Plaintiff deprived Plaintiff of his rights and liberties secured to him by the Fourth and Fourteenth Amendments, including his right to be free from unreasonable search and seizure.

81. Defendants LA COUNTY, LASD, and VILLANUEVA failed to train, supervise, and discipline police officers, including Defendant Romero so as to prevent the unlawful stopping, detention, interrogation, and search of Plaintiff.

82. Defendants LA COUNTY, LASD, and VILLANUEVA's failure to train, supervise, and discipline amounts to deliberate indifference to the rights of persons with whom the Defendant LASD comes into contact, including Plaintiff. It is this failure that has created and encouraged ongoing racial profiling and harassment.

83. The deficiency in training, supervising, and disciplining of such deputies represents a deliberate indifference on the part of the Defendants LA COUNTY, LASD, and VILLANUEVA to the rights of African American citizens.

84. As a direct result of Defendants LA COUNTY, LASD, and VILLANUEVA's negligence, Plaintiff was subjected to physical injury, emotional injury, body searching, confinement, and deprived of his liberty, freedom, and personal property.

85. By reason of the aforementioned acts and omissions of Defendants LA COUNTY, LASD, and VILLANUEVA's, Plaintiff was caused to incur medical expenses and loss of enjoyment of life.

86. Accordingly, Defendants LA COUNTY, LASD, and VILLANUEVA's, each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

87. Plaintiff also seeks statutory attorney fees under this claim.

## SEVENTH COUNT

### Unreasonable Search and Seizure / California Constitution, Article I, § 13

(By Plaintiff Against All Defendants)

88. Plaintiff realleges each and every allegation in paragraph 1 through 86 of this Complaint with the same force and effect as if fully set forth herein.

///

89. Defendants' above-described conduct violates Plaintiff's rights under the California Constitution, Article I, § 13 for which Plaintiff is entitled to damages where available.

90. Plaintiff submitted a timely claim with Defendant LA COUNTY in compliance with Cal. Govt. Code § 910 et seq., for the wrongful acts alleged. Defendant LA COUNTY rejected Plaintiff's claims for damages by operation of law. Defendants LA COUNTY and LASD are liable under Cal. Govt. Code § 815.2.

## EIGHTH COUNT

### Violation of the Tom Bane Civil Rights Act / Cal. Civ. Code § 52.1

(By Plaintiff Against Defendant Romero)

91. Plaintiff realleges each and every allegation in paragraph 1 through 89 of this Complaint with the same force and effect as if fully set forth herein.

92. California Civil Code § 52.1 (the Tom Bane Civil Rights Act), prohibits any person from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion (or by the use of unconstitutionally excessive force).

93. Conduct that violates the Fourth Amendment of the United States Constitution violates the California Tom Bane Civil Rights Act.

///

94. Plaintiff was detained without reasonable suspicion and Defendant Romero stopped, detained, interrogated, and searched Plaintiff without probable cause. Defendant Romero's actions thus deprived Plaintiff of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

95. Defendant Romero's use of force was excessive and unreasonable under the circumstances, especially since Plaintiff was unarmed and did not pose any threat at the time he was stopped. Defendant Romero's actions thus deprived Plaintiff of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

96. Defendant Romero intentionally violated Plaintiff's rights under § 1983 by detaining Plaintiff without probably cause, by searching Plaintiff without probable cause, and by using excessive force against Plaintiff. Further, these acts by Defendant Romero demonstrate that she had a reckless disregard for Plaintiff's constitutional rights.

97. Defendant Romero, while working as a deputy for LA COUNTY and LASD, and acting within the course and scope of her duties, interfered with or attempted to interfere with the rights of Plaintiff to be free from unreasonable searches and seizures, to equal protection of the laws, to access to the courts, and to be free from state actions that shock the conscience, by threatening or committing acts involving violence, threats, coercion, or intimidation. Plaintiff, an African American male, was also racially profiled by Defendant Romero.

98. Plaintiff was caused to suffer extreme mental and physical pain and suffering and loss of enjoyment of life

99. The conduct of Defendant Romero was a substantial factor in causing the harms, losses, injuries, and damages of Plaintiff.

100. Defendants LA COUNTY and LASD are vicariously liable for the wrongful acts of Deputy Romero pursuant to § 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

///

101. The conduct of Defendant Romero was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff entitling him to an award of exemplary and punitive damages.

102. Plaintiff also seeks attorney fees under this claim.

## NINTH COUNT

**Negligent Infliction of Emotional Distress / Cal. Govt. Code § 829 and California Common Law**

(By Plaintiff Against Entity Defendants and Defendant Romero)

103. Plaintiff realleges each and every allegation in paragraph 1 through 101 of this Complaint with the same force and effect as if fully set forth herein.

104. Defendant Romero negligently caused Plaintiff physical and emotional injury when she aggressively detained Plaintiff, including but not limited to, forcing him out of his vehicle, slamming him against her patrol vehicle, and discharging her spit onto his face when yelling at him. The use of force by Deputy Romero was excessive, unreasonable and Deputy Romero was negligent in stopping, detaining, interrogating, and searching Plaintiff, including pre-detention negligent conduct, actions, inactions, and tactics.

105. As a result Deputy Romero's excessive use of force, Plaintiff has suffered serious emotional distress, including but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, shame, and post-traumatic stress.

106. On information and belief, any ordinary reasonable person would be unable to cope with being detained, interrogated, and searched without probable cause. Additionally, any reasonable person would have been unable to cope with another individual discharging their bodily fluids onto them, especially during one of the peaks of the global COVID-19 pandemic.

107. Defendants LA COUNTY and LASD are vicariously liable for the wrongful acts of Deputy Romero pursuant to § 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

108. Plaintiff brings this claim individually and seeks damages under this claim as an individual.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays judgment as follows:

1. For compensatory damages against all defendants in an amount proven at trial;
2. For exemplary and punitive damages against defendants to be proven at trial;
3. For statutory damages, as provided by Cal. Civ. Code § 52.1(b) and any other applicable statute;
4. For costs of suit herein, including Plaintiff's reasonable attorney's fees; and
5. For such other and further relief as the court deems proper.

DATED:  January 31, 2022                **MOSLEY AND ASSOCIATES**

By: _____
Walter Mosley, Esq.
Carlos E. Montoya, Esq.
Nathalie Meza Contreras, Esq.
Attorneys for Plaintiff
JERMELLE HENDERSON

## JURY TRIAL DEMANDED

Plaintiff JERMELLE HENDERSON hereby demands a trial by jury.

DATED:  January 31, 2022                **MOSLEY AND ASSOCIATES**

By: _____
Walter Mosley, Esq.
Carlos E. Montoya, Esq.
Nathalie Meza Contreras, Esq.
Attorneys for Plaintiff
JERMELLE HENDERSON